**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

CLIFFORD CONYERS,

                                        Plaintiff,

           v.

TROY, NY BOARD OF ELECTION, et al.,

                                        Defendants.

No. 1:25-CV-0845
(BKS/PJE)

---

**APPEARANCES:**
Clifford Conyers
812 River Street
Troy, New York 12180
Plaintiff pro se

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER

#### I. **In Forma Pauperis**

Plaintiff pro se Clifford Conyers ("plaintiff") commenced this action on June 27, 2025, by filing a complaint.[1]  *See* Dkt. No. 1.  In lieu of paying this Court's filing fee, plaintiff submitted an application for leave to proceed in forma pauperis ("IFP").  *See* Dkt. No. 2.  The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP.[2]  This Court must now assess the merits of plaintiff's complaint pursuant to 28 U.S.C. §§ 1915; 1915A.

---

[1] The undersigned notes that plaintiff has one other action before this Court.  *See Conyers v. United Brotherhood of Carpenters and Joiners of America Local Union, et al.*, 1:25-CV-1500 (MAD/MJK).

[2] Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs they may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

## II.  Initial Review

### A.  Legal Standards

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."   28 U.S.C. § 1915(e)(2)(B).  "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action."  *Praileau v. Fischer*, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).[3]

The Second Circuit affords pro se litigants a "special solicitude" such "that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest."  *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks, citations, and footnote omitted).  However, the Court is not required to accept unsupported allegations that are devoid of sufficient facts or claims.  Although detailed allegations are not required at the pleading stage, a complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which the claims are based.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Bell Atlantic v. Twombly*, 550 U.S.

---

[3] Despite the statutory language referring to incarcerated individuals, these requirements apply equally to non-prisoner pro se litigants seeking to proceed in forma pauperis.  *See* N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A when an application to proceed in forma pauperis is filed.").

544, 555-56 (2007) (Noting that a plaintiff bringing suit must plead "enough facts to state a claim to relief that is plausible on its face.").

"If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint." *Rich v. Akwesasne Mohawk Casino Resort*, No. 8:24-CV-0255 (AMN/CFH), 2024 WL 3677262, at *2 (N.D.N.Y. Aug. 6, 2024), *report and recommendation adopted,* No. 8:24-CV-0255 (AMN/PJE), 2025 WL 286937 (N.D.N.Y. Jan. 24, 2025) (citing *Simmons v. Abruzzo*, 49 F.3d 83, 86-87 (2d Cir. 1995)).[4] "However, an opportunity to amend is not required where 'the problem with [the plaintiff's] causes of action is substantive' such that 'better pleading will not cure it.'" *Id*. (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

### III. **Discussion**

### A. **Plaintiff Complaint**[5]

Plaintiff's complaint arises out of the following series of events.  On April 3, 2025, plaintiff went to the Rensselaer County Board of Elections ("Board of Elections") office in Troy, New York, "to inquire about the last day of filing [his] designat[ing][6] petition to run for City Council of [D]istrict [#2]."  Dkt. No. 1 at 2.  Plaintiff states that he spoke with Megan Connelly, a Rensselaer County Board of Elections staff employee ("Connelly"), who advised him "that she would have to speak to her boss," Mary E. Sweeney, Democratic

---

[4] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

[5] Plaintiff's complaint includes eleven attachments.  *See* Dkt. Nos. 1-1, 1-2, 1-3, 1-4, 1-5, 1-6, 1-7, 1-8, 1-9, 1-10, 1-11.  These attachments have also been reviewed in connection with the initial review of plaintiff's complaint.  *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("A complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.") (internal quotation marks and citations omitted).

[6] The undersigned notes that plaintiff uses the words "designating" and "designation" interchangeably when describing the type of petition he filed with the Rensselaer County Board of Elections.  The first page of the petition attached to plaintiff's complaint states "Designating and Independent Petitions."  Dkt. No. 1-8.

Commissioner for the Rensselaer County Board of Elections ("Sweeney"). *Id*. Plaintiff asked Sweeney when the last day to file his designating petition was because the 2025 Rensselaer County "running for office" booklet stated that the filing deadline was April 4, 2025. *Id*. Sweeney informed plaintiff that the deadline to file his designating petition was April 3, 2025, and that the April 4, 2025, date in the 2025 Rensselaer County booklet "was an error." *Id*.

Later that day, plaintiff filed his designating petition with the Board of Elections. *See* Dkt. No. 1 at 2. Plaintiff states that Kimberly Nielson, Deputy Commissioner for the Rensselaer County Board of Elections ("Nielson") processed his designating petition. *See id*. Plaintiff asked Nielson who was responsible for the error in the 2025 Rensselaer County booklet. *See id*. Nielsen responded, "I did," "with a guilty expression on her face." *Id*. Plaintiff then asked Nielson what would happen "if someone that looks like you" attempted to file a designating petition on April 4, 2025. *Id*. Neilson replied that if someone attempted to file a designating petition on April 4, 2025, the Board of Elections would honor the filing. *See id*. at 2-3. Plaintiff further asked Nielson why he was "being compelled to submit [his] designation petition on April 3, 2025?" *Id*. at 3. Nielson did not reply "and just stamped my designation petition." *Id*.

On April 9, 2025, plaintiff submitted an "opportunity petition" with the Board of Elections in furtherance of his application to run for City Council. *See* Dkt. No. 1 at 3. On April 29, 2025, plaintiff called the Rensselaer County Democratic Board of Elections to inquire as to the status of his designating and opportunity petitions. *See* Dkt. No. 1 at 4. Tina Jones, a Rensselaer County Board of Elections staff employee ("Jones"), took plaintiff's call and told him "that her boss will get in contact with [him]." *Id*.

On May 5, 2025, Sweeney called plaintiff on the telephone to follow up on the April 29, 2025, telephone call about the status of his designating and opportunity petitions.[7] *See* Dkt. No. 1 at 4. Sweeney informed plaintiff that the Board of Elections had mailed him a letter stating that some of the signatures in his petitions were insufficient and rejected by the Board of Elections. *See id*. at 4-5. Sweeney further explained that because plaintiff did not have the requisite number of signatures required by law, he did not meet the requirements to be on the Democratic Party primary ballot. *See id*. Plaintiff replied that he never received a letter of this nature from the Board of Elections and verified his home address as 812 River Street, Troy, New York. *See id*. at 5. Sweeney "stated that she [would] mail [plaintiff] another letter explaining the insufficient signatures" issue. *Id*.

Plaintiff asserts that as of June 2, 2025, he had not "received any notification letter by mail of any sort." Dkt. No. 1 at 5. Plaintiff further asserts that as of the date he filed this complaint, the "Board of Election[s] never notified me of any errors on any of my petitions." *Id*. at 4.

As a result of the events described above, plaintiff claims that "[o]n or about May 5, 2025, [he] was unlawfully excluded from the certified ballot for the [Democratic Party] Primary Election for public office in Rensselaer County, New York." Dkt. No. 1-3 at 2. Plaintiff alleges that Sweeney and Nielsen discriminated against him based on his race and gender because he is an African-American man and they are both white women, and they did so in an attempt to stop him from running for office and to suppress both his right

---

[7] In support of this statement, plaintiff submits a screenshot of a cell phone call log that he claims indicates Sweeney called him from a phone number at (518) 270-2994. *See* Dkt. No. 1-5. The undersigned accepts plaintiff's allegations as true; however, it is unclear from the screenshot what day the call was made, whether this was an incoming or outgoing call, or whether this call was from Sweeney.

to vote and the vote in general.  *See id*. at 3.  More specifically, plaintiff asserts that Nielson "stated that if a person that . . . looked just like her, a [c]aucasian, would come on the following day, they would have been able to file their designation petition . . . but [he] wasn't given that right because of [his] race."  *Id*. at 7.  Plaintiff further alleges that Connelly, Schneider, and Jones were present when the discrimination occurred, did not try to stop the alleged constitutional violations, and "laugh[ed] along []at the [a]rbitrary and [c]apricious deceit [that] was being implemented by their supervisors."  *Id*. at 3.  Moreover, plaintiff claims that he is a member of a protected class who was discriminated against when (1) he was intentionally misled and forced to submit his designating petition one day before the official filing deadline, (2) the Board of Elections refused to provide him with the required statutory notice informing him any signature errors in his designating and opportunity petitions, and (3) the Board of Elections denied his right to an opportunity to cure any signature errors.  *See* Dkt. No. 1 at 7-17.

Plaintiff seeks $200,000 in "compensatory damages," $30,000,000 in "punitive damages," and $200,000 in "nominal and moral damages."  Dkt. No. 1-3 at 1.  Plaintiff also seeks "a declaratory injunction [stating] that the actions of Defendants violated [his] rights under the First and Fourteenth Amendments and 42 U.S.C. § 1983 (sic)"; "a permanent injunction prohibiting Defendants from excluding any candidate from the ballot without statutory notice, hearing, and an opportunity to cure defects"; and "a mandatory injunction directing Defendants to implement transparent objection standards in conformity with constitutional standards."  *Id*. at 2.

## B.  **Analysis**

Plaintiff seeks to proceed pursuant to 42 U.S.C. § 1983[8] against the "Troy, NY Board of Election," Sweeney, Nielson, Connelly, Schneider, and Jones, alleging that his First, Fifth, Fourteenth, and Fifteenth Amendment rights were violated. *See generally* Dkt. No. 1. Plaintiff also alleges that defendants violated his rights under Section 2 of the Voting Rights Act of 1965 ("Voting Rights Act"). *See id*. at 7, 11.

Although plaintiff's complaint lists Sweeney as "President Commissioner of Troy, New York [B]oard of Election"; Nielson as "Deputy Commissioner of the [B]oard of Election in Troy, NY"; Connelly as "[B]oard of Election staff employee"; Schneider as "[B]oard of Election staff employee"; and Jones as "[B]oard of Election staff employee"; plaintiff does not specify whether he wishes to sue each of these defendants in their official capacities, individual capacities, or both. Dkt. No. 1 at 1; *see generally* Dkt. No. 1. Accordingly, "[a]t this early stage, the undersigned will consider whether either a personal or official capacity claim [alleged against each defendant] can survive initial review." *Scott v. Crossway*, No. 1:22-CV-0500 (BKS/CFH), 2022 WL 16646531, at *6 (N.D.N.Y. Nov. 3, 2022), *report and recommendation adopted,* No. 1:22-CV-500 (BKS/CFH), 2023 WL 34543 (N.D.N.Y. Jan. 4, 2023) (citing *Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir. 1993) (citations and quotation marks omitted) ("[I]n many cases, a complaint against public officials will not clearly specify whether officials are sued personally, in their official capacity, or both, and only [t]he course of proceedings . . . will indicate the nature of the liability to be imposed[.]")).

---

[8] Section 1983 "establishes a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F.Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

## 1. **Individual Capacity Claims**

### a. **Fourteenth Amendment: Due Process**

Affording plaintiff due solicitude, he argues that his Fourteenth Amendment Due Process rights were violated because Sweeney failed to notify him of any defects in his designating and opportunity petitions and failed to provide him with an opportunity to cure such defects in violation of New York State Election Law §6-154.  See Dkt. No. 1 at 4-5, 13-14, 16-17.[9]  In support of this claim, plaintiff submits copies of various documents and records indicating that his home address is 812 River Street, Troy, New York 12180.  See Dkt. Nos. 1-3, 1-5.

The Due Process Clause provides that a State may not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. "The two threshold questions in any procedural due process claim are: (1) whether the plaintiff possessed a protected liberty or property interest protected by the United States Constitution or federal statutes[,] and (2) if so, what process was due before plaintiff could be deprived of that interest."  *Barzee v. Tyler*, No. 8:21-CV-902 (GTS/CFH), 2022 WL 1406606, at *7 (N.D.N.Y. May 3, 2022), report and recommendation adopted, No. 8:21-CV-902 (GTS/CFH), 2022 WL 2079084 (N.D.N.Y. June 9, 2022) (quoting *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995) (internal quotation marks omitted)).[10]

---

[9] Plaintiff also claims that defendants violated his First Amendment right to political expression, in part, because his exclusion "from the May 2025 primary election ballot without providing statutory notice, hearing, or an opportunity to cure . . . deprived [him] of the opportunity to engage in core political speech."  Dkt. No. 1 at 17.  Although plaintiff raises this claim under the First Amendment, affording plaintiff due solicitude, the substance of this claim is the same as the Fourteenth Amendment Due Process claim analyzed herein. The undersigned will discuss the remainder of plaintiff's First Amendment claims below.  *See infra* 16-18.

[10] Plaintiff also asserts that Sweeney's conduct violated his Fifth Amendment Due Process rights.  *See* Dkt. No. 1 at 5.  However, the Fifth Amendment is only applicable to the federal government.  As plaintiff does not name any federal entity or actor, the undersigned recommends dismissing plaintiff's Fifth Amendment due process claim with prejudice and without opportunity to amend.  *See, e.g., Jackson v. Wylie*, No. 22-CV-0139(MAD/CFH), 2022 WL 2595318, at *2 (N.D.N.Y. July 8, 2022) ("As the Fifth Amendment provides

8

"However, there can be no Due Process Clause violation so long as the State provides a meaningful post deprivation remedy." *Nicholas v. Seggos*, No. 8:23-CV-463 (GTS/CFH), 2023 WL 6121164, at *6 (N.D.N.Y. Sept. 19, 2023), *report and recommendation adopted*, No. 8:23-CV-463 (GTS/CFH), 2023 WL 7004103 (N.D.N.Y. Oct. 24, 2023) (quoting *Clark v. Dominique*, 798 F. Supp. 2d 390, 401 (N.D.N.Y. 2011) (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) (internal quotation marks omitted)). "In New York State, an Article 78 proceeding provides an avenue of post[-]deprivation redress that satisfies due process requirements." Id. (quoting *Clark*, 798 F. Supp. 2d at 401); see also *Rhee-Karn v. Burnett*, No. 13 CIV. 6132 (JPO), 2014 WL 4494126, at *5 (S.D.N.Y. Sept. 12, 2014) ("An Article 78 petition is the proper vehicle for challenging state actions taken in violation of the Federal Constitution." (citations omitted)). "[I]t matters not whether a plaintiff actually avails [him]self of the state court post-deprivation process. So long as that process is available, a due process claim must be dismissed." *Id.* (quoting *Clark*, 798 F. Supp. 2d at 401) (quoting *Longo v. Suffolk Cnty. Police Dep't*, 429 F. Supp. 2d 553, 560 (E.D.N.Y. 2006)). "In contrast, when the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing. Under those circumstances, the availability of post-deprivation procedures will not, ipso facto, satisfy due process." *Id.* (quoting *Rivera-Powell v. New York City Bd. of*

---

due process protections against the actions of the federal government and its employees, claims against state employees and agencies do not give rise to a Fifth Amendment violation.") (citing U.S. Const. amend. V)); *see also Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without due process of law.").

*Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (citation and internal quotation marks omitted)).

Plaintiff does not allege that he maintains a property interest in running for public office. *See generally* Dkt. No. 1. However, affording plaintiff due solicitude, and accepting as true for purposes of this review only, that he maintains a property interest in running for public office, plaintiff fails to establish a Fourteenth Amendment Due Process claim based on Sweeney's alleged failure to notify him of any defects in his designating and opportunity petitions and provide him with an opportunity to cure such defects. The Second Circuit has addressed this exact situation in *Rivera-Powell*, 470 F.3d at 458.

"In *Rivera-Powell*, the Second Circuit held that where a state procedure—such as an Article 78 proceeding—is available, a candidate for office did not state a due process claim, as the state procedure provided the candidate with the opportunity to validate his petition and voice his position before the [Board of Elections]." *Feliciano v. New York City Bd. of Elections*, No. 26-CV-3486 (LTS), 2026 WL 1295843, at *2 (S.D.N.Y. May 11, 2026) (citing *Rivera-Powell*, 470 F.3d at 466-67). "[T]he statutory provision for an expedited review of [a Board of Elections] determination by the New York Supreme Court provides adequate pre-deprivation review and satisfies due process requirements." *Id.* (citing *Farquharson v. Lafayette*, No. 19-CV-3446 (NSR), 2020 WL 1699985, at *8 (S.D.N.Y. Apr. 7, 2020)). However, "it is of no moment whether a candidate fails to fully avail himself of the procedures that are available" so long as the procedures themselves are available. *Id.* (citing *Rivera-Powell*, 470 F.3d at 468, n.9).

Here, plaintiff's complaint is silent as to whether he filed an Article 78 proceeding in New York State court (1) challenging Sweeney's purported failure to provide him the

10

statutorily required notice of any defects in his designating and opportunity petitions and an opportunity to cure any of the defects, or (2) seeking to compel Sweeney to provide the same. See generally Dkt. No. 1. Similarly, plaintiff has not alleged that he was prevented in any way from filing an Article 78 proceeding to challenge Sweeney's conduct and validate his designating and opportunity petitions. *See id*.

Therefore, the undersigned concludes that plaintiff's Fourteenth Amendment Due Process claim fails because even assuming, without deciding, that plaintiff possessed a constitutionally protected interest, the availability of expedited Article 78 review forecloses a procedural due process claim. *See Feliciano*, 2026 WL 1295843, at *2 (citing *Rivera-Powell*, 470 F.3d at 466-68); *Nicholas*, 2023 WL 6121164, at *6 (quoting *Clark*, 798 F. Supp. 2d at 401); N.Y. C.P.L.R. § 7803. Accordingly, the undersigned recommends that plaintiff's Fourteenth Amendment Due Process claim against Sweeney in her individual capacity for monetary damages be dismissed with prejudice and without opportunity to amend.

### b. **Fourteenth Amendment: Equal Protection**

"The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law." *Hamilton v. New York State Dep't of Corr. & Cmty. Supervision*, No. 9:18-CV-1312 (MAD/CFH), 2021 WL 5095962, at *17 (N.D.N.Y. Aug. 18, 2021), *report and recommendation adopted sub nom. Hamilton v. Annucci*, No. 9:18-CV-01312 (MAD/CFH), 2021 WL 4316747 (N.D.N.Y. Sept. 23, 2021) (citing U.S. CONST. amend. XIV, § 1). "Essential to that protection is the guarantee that similarly-situated persons be treated equally." *Id*. (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "To prove a violation of the Equal Protection Clause . . . a plaintiff must

demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination" and "without any rational basis" *Id*. (first quoting *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005); then quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 158-59 (2d Cir. 2006)).

> [T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

*Hamilton*, 2021 WL 5095962, at *17 (quoting *Vegas v. Artus*, 610 F. Supp. 2d 185, 209 (N.D.N.Y. 2009)); *see also Ramsey v. Goord*, 661 F. Supp. 2d 370, 397 (W.D.N.Y. 2009) ("Establishment of an equal protection violation requires the plaintiff show purposeful discrimination directed at an identifiable suspect class.") (internal quotation marks and citation omitted).

"A plaintiff may bring a class-of-one claim by showing that he or she was intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Barzee*, 2022 WL 1406606, at *9 (quoting *AYDM Assocs.*, 205 F. Supp. 3d at 268) (internal quotation marks omitted) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 654 (2000)). "[C]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons [with] whom they compare themselves." *Id*. (quoting *Bill & Ted's Riveira, Inc. v. Cuomo*, 494 F. Supp. 3d 238, 246 (N.D.N.Y. 2020)) (internal quotation marks and citations omitted); *see also Hu v. City of N.Y.*, 927 F.3d 81, 93 (2d Cir. 2019) (resolving uncertainty as to the "extremely high" degree of similarity required for comparators in "class-of-one" claims). To prove a "class-of-one" claim:

> [A] plaintiff must establish that he and a comparator are "*prima facie* identical" by showing that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and differences in treatment are sufficient to exclude the possibility that the defendant acted on the basis of mistake."

*Id*. (quoting *Hu*, 927 F.3d at 92 (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008))).

Plaintiff claims that Neilson discriminated against him on the basis of his race and gender because he is an African-American man who was required to file his designating petition on April 3, 2025, one day before the publicly noticed deadline on April 4, 2025. Dkt. No. 1 at 2-3.  More specifically, plaintiff alleges that he asked Nielson, "If someone that looks like you come (sic) on the 4th of April to file their designating petition, which stated in the booklet (sic), what would have done (sic), she told me that they would have honored the designating petition on the 4th of April 2025."  *Id*.  Plaintiff interpreted this interaction as Nielson "stated that if a person that . . . looked just like her, a Caucasian, would come on the following day, they would have been able to file their designation petition".  Dkt. No. 1 at 7; *see id*. at 9, 11.  Plaintiff further claims that Sweeney and Neilson "deliberately . . . discriminate[d] against [him] as an African American Male because they had already endorsed a white female for district 2#."  *Id*. at 3.

The undersigned concludes that although plaintiff's complaint asserts that, as an African-American male, he is a member of two suspect or quasi-suspect classes, and plaintiff alleges that Sweeney and Neilson discriminated against him based on his membership in those suspect or quasi-suspect classes, plaintiff's complaint fails to establish a Fourteenth Amendment Equal Protection claim.  *See Hamilton*, 2021 WL

5095962, at *17 (quoting *Vegas*, 610 F. Supp. 2d at 209); *Ramsey*, 661 F. Supp. 2d at 397). Even accepting plaintiff's version of the conversation with Neilsen, the alleged statement attributed to her is ambiguous and does not plausibly establish intentional racial discrimination when viewed in context.

To the extent that plaintiff's complaint could potentially be interpreted as claiming that Sweeney discriminated against him on the basis of his race or gender by not sending him a notice letter informing him of any defects in his designating and opportunity petitions or affording him an opportunity to cure any such defects, plaintiff states no facts supporting his claim that Sweeney's failure to act was based on his race or gender. *See* Dkt. No. 1 at 7-8. To state a viable claim for denial of equal protection, a plaintiff generally must allege "purposeful discrimination . . . directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). "In the alternative, under a "class of one" theory, plaintiff must allege that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment." *Witherspoon v. Corey*, No. 9:24-CV-0296 (MAD/DJS), 2025 WL 1836435, at *6 (N.D.N.Y. July 3, 2025) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Allen v. New York City Hous. Auth.*, No. 1:15-CV-00173 (ALC), 2016 WL 722186, at *5 (S.D.N.Y. Feb. 19, 2016) (quoting *Marchant v. New York City Bd. of Elections*, 815 F. Supp. 2d 568, 580 (E.D.N.Y. 2011) (quoting *Rivera-Powell*, 470 F.3d at 470)) ("To establish a constitutional violation under the Equal Protection Clause, plaintiffs must show that a state actor intentionally discriminated against them, either by adopting out of [discriminatory] animus policies which are facially neutral but have a . . . discriminatory effect, or by applying a facially neutral policy in a . . . discriminatory manner."); *Gagliardi v. Vill. of*

14

*Pawling*, 18 F.3d 188, 193 (2d Cir. 1994) ("To establish such intentional or purposeful discrimination, it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently.").

Plaintiff's accusations that "[t]hey wanted to discriminate against me because of my [r]ace," Dkt. No. 1 at 3, and "I was misled and ignored by the board of election and Mary Sweeney et al, (sic) because of my race.", *id.* at 7, do not support a viable claim for denial of equal protection. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007) (noting that a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."). Plaintiff does not allege that Sweeney mentioned or referenced his race or his gender.  *See generally id*.  Accordingly, plaintiff fails to provide any support for his conclusions.  *See Teator v. Shedroff*, No. 3:25-CV-0111 (AJB/PJE), 2025 WL 3516308, at *3 (N.D.N.Y. Nov. 17, 2025), *report and recommendation adopted,* No. 3:25-CV-111 (AJB/PJE), 2025 WL 3515830 (N.D.N.Y. Dec. 8, 2025) (recommending dismissal of the plaintiff's complaint where the accusations amounted to baseless conclusions); *Kirby v. Spicer*, No. 5:25-CV-324 (AMN/PJE), 2025 WL 3089258, at *4 (N.D.N.Y. Nov. 5, 2025), *report and recommendation adopted,* No. 5:25-CV-324 (AMN/PJE), 2025 WL 3551650 (N.D.N.Y. Dec. 11, 2025) (same).

Moreover, to the extent plaintiff also seeks to proceed under a selective-enforcement or class-of-one theory, the complaint identifies no similarly situated comparator who received more favorable treatment.  Plaintiff admits that no other white individual(s) attempted to file a designating petition during the relevant period in question between April 3, 2025, and April 4, 2025.  S*ee* Dkt. No. 1 at 10 ("Although no physical white candidate filed during the same period.").  Further, plaintiff does not identify or allege

15

that any individual(s) of any other race or gender attempted to file a designating petition during the relevant period. *See generally id*.

Therefore, the undersigned concludes that plaintiff's Equal Protection claim against Sweeney and Nielson in their individual capacities for monetary damages must fail as a matter of law because plaintiff has not "demonstrate[d] that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Hamilton*, 2021 WL 5095962, at *17 (quoting *Phillips*, 408 F.3d at 129). Out of special solicitude to the pro se plaintiff, because it is not impossible that plaintiff may be able to amend to set forth as sufficient claim, supported by a proper pleading alleging actual comparator candidates, additional discriminatory statements, and/or discriminatory Board practices, the undersigned recommends that plaintiff's Fourteenth Amendment Equal Protection claim as alleged against Sweeney and Nielson in their individual capacities for monetary damages be dismissed without prejudice and with opportunity to amend.

### c. First Amendment

Plaintiff claims that defendants violated his First Amendment "right to political expression, including . . . association with voters, and dissemination of ideas central to the democratic process." Dkt. No. 1 at 17. Plaintiff states that his exclusion "from the May 2025 primary election ballot . . . deprived [him] of the opportunity to engage in core political speech [and] denied voters the right to hear from and vote for the candidate of their choice." *Id*.

"It is well settled that the First Amendment protects the rights of candidates and their supporters to organize, access the ballot, and vote for the candidate of their choice."

16

*Hafner v. New York State Bd. of Elections*, 823 F. Supp. 3d 260, 268 (E.D.N.Y. 2026) (quoting *Tiraco v. NYSBOE*, 963 F. Supp. 2d 184, 197 (E.D.N.Y. 2013)); *see also McMillan v. New York State Bd. of Elections*, No. 10-CV-2502 (JG) (VVP), 2010 WL 4065434, at *10 (E.D.N.Y. Oct. 15, 2010), *aff'd,* 449 F. App'x 79 (2d Cir. 2011) ("The First Amendment does not provide candidates with a right to have their political parties listed on election ballots, nor does it invest them with a right to use ballots as forums for political expression. However, the First Amendment does protect the rights of candidates and their supporters to organize, access the ballot, and vote for the candidate of their choice." (internal citations and quotation marks omitted).

As an initial matter, to the extent plaintiff contends that defendants "denied voters the right to hear from and vote for the candidate of their choice[,]" Dkt. No. 1 at 17, plaintiff does not have standing to bring a First Amendment claim on behalf other voters. *See* 28 U.S.C. § 1654; *Auguste v. U.S. Customs & Border Prot.*, No. 8:24-CV-0066 (MAD/CFH), 2024 WL 3649889, at *4 (N.D.N.Y. May 15, 2024), *report and recommendation adopted,* No. 8:24-CV-0066 (MAD/CFH), 2024 WL 3548762 (N.D.N.Y. July 26, 2024) ("[A]s a pro se plaintiff, [plaintiff] cannot represent other plaintiffs."); *Rodriguez v. Jaddie Stewart Agency Inc.*, No. 08-CV-46 (JFB) (AKT) , 2009 WL 212123, at *4 (E.D.N.Y. Jan. 28, 2009) ("Recognizing the lack of standing in this lawsuit . . . it is axiomatic that a pro se plaintiff can only represent himself and may not appear on someone else's behalf."); *Thomas v. Tesla Inc.*, No. 26-CV-1640 (GBD), 2026 WL 1133802, at *1 (S.D.N.Y. Apr. 24, 2026) (citing 28 U.S.C. § 1654) ("This is because *pro se* litigants who are not attorneys cannot represent others."); *U.S. ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008) ("[A]n individual who is not licensed as an attorney may not appear on another person's

behalf in the other's cause."); *see also* Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper must be signed by . . . a party personally if the party is unrepresented.").  Plaintiff has not demonstrated that he is an attorney.  *See generally* Dkt. No. 1.  Therefore, plaintiff cannot represent any other individual but himself.[11]

As plaintiff does not have standing to represent any other voters and lacks an absolute constitutional right to appear on the ballot, plaintiff's First Amendment political expression claim must fail.  *See* 28 U.S.C. § 1654; *U.S. ex rel. Mergent Servs.*, 540 F.3d at 92; *Marchant*, 815 F. Supp. 2d at 578.  Therefore, for the foregoing reasons, the undersigned recommends that plaintiff's First Amendment claim be dismissed with prejudice and without opportunity to amend.

### d.  **Personal Involvement of Connelly, Schneider, and Jones**

"[I]n order to recover damages in a civil rights action, [the] plaintiff must allege a defendant's direct or personal involvement in the alleged constitutional deprivations, and supervisory officials may not be held liable merely because they held a position of authority."  *Golston v. Cortese*, No. 1:21-CV-914 (GTS/CFH), 2022 WL 2657290, at *6, n.7 (N.D.N.Y. Apr. 1, 2022), *report and recommendation adopted,* No. 1:21-CV-914

---

[11] Further, assuming, *arguendo,* that plaintiff did have the right to represent other individuals, plaintiff's assertion that defendants' actions "denied voters the right to hear from and vote for the candidate of their choice" fails to raise a First Amendment political expression claim.  "[T]he loss of the[] ability to vote for the candidate of [your] choice, which-unlike the right to vote-is not an absolute right."  *Marchant*, 815 F. Supp. 2d 568, 578 (E.D.N.Y. 2011).  The Supreme Court has

> recognized that the rights to "vote in any manner" and "to associate for political purposes through the ballot" are not absolute because regulation of elections is necessary for the fair, honest, and orderly administration of elections, and election laws "invariably impose some burden upon individual voters."  Election laws—including those that govern the eligibility of candidates—"inevitably affect[] . . . the individual's right to vote . . . to associate with others for political ends."

*Id*. (quoting *Burdick v. Takushi,* 504 U.S. 428, 433 (1992) (citing *Anderson v. Celebrezze,* 460 U.S. 780, 788 (1983)).

(GTS/CFH), 2022 WL 2071773 (N.D.N.Y. June 9, 2022) (quoting *Montes v. O'Shea*, No. 1:21-CV-303 (DNH/ATB), 2021 WL 1759853, at *5 (N.D.N.Y. Apr. 6, 2021), *report and recommendation adopted,* No. 1:21-CV-303, 2021 WL 1758858 (N.D.N.Y. May 4, 2021) (citing *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)). "[T]here is no special rule for supervisory liability.  Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Id*. (quoting *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676)); *see also Davis v. Cnty. of Nassau*, 355 F. Supp. 2d 668, 677 (E.D.N.Y. 2005) (quoting *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir. 1996)) (A "complaint must still allege particular *facts* indicating that an individual defendant was personally involved in the deprivation of the plaintiff's constitutional rights; mere 'bald assertions and conclusions of law' do not suffice.").  "A complaint that essentially regurgitates the relevant 'personal involvement' standard, without offering any facts indicating that, or how, an individual defendant in a supervisory role was personally involved in a constitutional violation, cannot withstand dismissal." *Davis*, 355 F. Supp. 2d at 677 (citations omitted).  "[V]ague, conclusory allegations do not satisfy the personal involvement standard." *Collins v. City Univ. of New York*, No. 21 CIV. 9544 (NRB), 2023 WL 1818547, at *6 (S.D.N.Y. Feb. 8, 2023) (citing *Medina v. Kaplan*, No. 16-CV-7223 (KMK), 2018 WL 797330, at *6 (S.D.N.Y. 2018)).

Affording plaintiff due solicitude and reading his complaint liberally, plaintiff fails to specify how Connelly, Schneider, and Jones were personally involved in any constitutional violation.  As stated above, plaintiff alleges that (1) on April 3, 2025, Connelly informed plaintiff "that she would have to speak with her boss" regarding the

status of his designating petition; (2) on April 29, 2025, Jones informed plaintiff "that her boss will get in contact with [him]" after he called the Board of Elections office to inquire about the status of his designating and opportunity petitions; and (3) Schneider works in the Troy, New York office for the Board of Elections. Dkt. No. 1 at 2, 4. Yet, none of these actions demonstrate that Connelly, Schneider, or Jones violated plaintiff's constitutional rights. Answering the phone or working in the Board of Elections office, without more, does not violate plaintiff's constitutional rights.

Plaintiff further alleges that Connelly, Schneider, and Jones "were present when the deceit was being implemented," "did not try to stop the constitutional violations by means of telling their bosses that were that they were discriminating against [him] because of [his] [r]ace," and "thus, laugh[ed] along []at the [a]rbitrary and [c]apricious deceit [that] was being implemented by their supervisors." Dkt. No. 1 at 3. Affording plaintiff due solicitude and reading his complaint liberally, these allegations suggest that Connelly, Schneider, and Jones were present when Sweeney and Nielson discriminated against plaintiff, observed Nielson speaking with plaintiff, were aware of Sweeney and Nielson violating plaintiff's constitutional rights, and condoned the constitutional violations by laughing and failing to intervene in the violations.

Plaintiff does not contend that Connelly, Schneider, or Jones personally discriminated against him or violated his constitutional rights. *See generally id*. Laughing does not amount to any constitutional violation. *See* Dkt. No. 1 at 3. Moreover, accepting plaintiff claim as true, that Connelly, Schneider, and Jones "did not try to stop the constitutional violations" being perpetrated by Sweeney and Nielson, plaintiff has not established that Connelly, Schneider, or Jones had a duty to intervene and failed to act

upon that duty when they witnessed or learned of plaintiff's discrimination.[12]   *Id*. at 3.
Even if plaintiff could demonstrate that Connelly, Schneider, and Jones had a duty to
intervene – something he has not shown – he cannot sue them for failing to intervene
when he has failed to demonstrate an underlying constitutional violation.  *See Matthews
v. City of New York*, 889 F. Supp. 2d 418, 443-44 (E.D.N.Y. 2012) ("[A] failure to intervene
claim is contingent upon the disposition of the primary claims underlying the failure to
intervene claim."); *see also Forney v. Forney*,  96 F. Supp. 3d 7, 13 (E.D.N.Y. 2015)
(same).

Therefore, the undersigned concludes that the plaintiff's Section 1983 claims
against Connelly, Schneider, and Jones in their individual capacities for monetary
damages must fail because he fails to allege personal involvement in any of the alleged
constitutional violations and amendment is unwarranted as he has not established that
Connelly, Schneider, and Jones had a duty to intervene.  *See Golston*, 2022 WL 2657290,
at *6, n.7; *Waheed*, 2026 WL 539731, at *3 (citing *Town of Castle Rock, Colo.*, 545 U.S.
at 755-56).  Accordingly, the undersigned recommends dismissing plaintiff's Section 1983

---

[12] "Government officials generally have no federal constitutional duty to investigate or otherwise protect an individual from harm."  *Waheed v. Police Dep't 19th Precinct (NYPD)*, No. 25-CV-9101 (LLS), 2026 WL 539731, at *3 (S.D.N.Y. Feb. 26, 2026) (citing *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 755-56 (2005)); *see also DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989); *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994).  However,

> [t]here are two recognized exceptions to this general rule: (1) "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being," *DeShaney*, 489 U.S. at 199-200; or (2) when government officials affirmatively create or increase danger to the plaintiff, *see, e.g.*, *Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008). In this context, the plaintiff must also show that a government official's "behavior was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Id.*

*Id*. at *3-4.  The undersigned concludes that neither exception applies; thus, even if, *arguendo*, plaintiff were able to demonstrate that Sweeney or Neilson violated his constitutional rights, Connelly, Schneider, and Jones did not have an affirmative duty to intervene on his behalf, because plaintiff was not in custody and does not demonstrated that the alleged misconduct "shock[ed] the temporary conscience.".  *See id*.

claims against Connelly, Schneider, and Jones in their individual capacities for monetary damages with prejudice and without opportunity to amend.

## 2. *Monell*

Plaintiff's complaint also seeks to proceed against the Board of Elections office in Troy, New York, and alleges that at all relevant times, Sweeney, Nielson, Connelly, Schneider, and Jones were officers and employees of the Board of Elections office in Troy, New York. *See generally* Dkt. No. 1. The Board of Elections office in Troy, New York is the main office for the Rensselaer County Board of Elections.[13] At this stage of the pleadings, for purposes of the initial review, the Court will accept that the Rensselaer County Board of Elections is a municipal arm of Rensselaer County.[14] *See Colon v. Monroe Cnty. Bd. of Elections*, No. 6:20-CV-06465 (EAW), 2021 WL 1139854, at *5, n. 1 (W.D.N.Y. Mar. 25, 2021) (noting that the Monroe County Board of Elections is a municipal entity). Plaintiff has not named Rensselaer County as a defendant. *See generally* Dkt. No. 1. As such, to the extent that plaintiff seeks to proceed against the Rensselaer County Board of Elections for monetary damages, plaintiff can only proceed with his Section 1983 claims against Rensselaer County and pursuant to the Supreme Court's holding in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

"Municipalities may be sued directly under [Section] 1983" pursuant to *Monell* "for constitutional deprivations inflicted upon private individuals pursuant to governmental custom, policy, ordinance, regulation, or decision." *Batista v. Rodriguez*, 702 F.2d 393,

---

[13] RENSSELAER COUNTY, NEW YORK, "Elections" https://www.rensco.com/429/Elections (last visited June 23, 2026).

[14] The Court notes that in performing the specific function at issue here, administrating ballot access requirements, the Board may be acting as an arm of the State, which in turn would implicate New York State's Eleventh Amendment Immunity. However, the undersigned need not reach this issue at this stage.

397 (2d Cir. 1983) (citing *Monell*, 436 U.S. at 690-91). "To set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead that a deprivation of his constitutional rights was 'caused by a governmental custom, policy, or usage of the municipality.'" *Dougal v. Lewicki*, No. 1:23-CV-1167 (DNH/CFH), 2023 WL 6430586, at *10 (N.D.N.Y. Oct. 3, 2023), *report and recommendation adopted*, 2023 WL 7013384 (N.D.N.Y. Oct. 25, 2023) (quoting *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012) (citing *Monell*, 436 U.S. at 690-91)). "Municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right; it 'may not be held liable on a theory of respondeat superior.'" *Id*. (quoting *Jeffes v. Barnes*, 208 F.3d 49, 56 (2d Cir. 2000)). An "official policy or custom" can be pleaded as follows:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing municipal policies related to the particular deprivation in question; (3) a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge of the practice to policymaking officials; or (4) a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with the municipal employees.

*Id*. (quoting *Dorsett-Felicelli, Inc. v. Cty. of Clinton*, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005)) (internal citations omitted); *see also Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (explaining that, to state an official policy claim under *Monell*, the plaintiff "must do more than simply state that a municipal policy . . . exists"); *Coleman v. Cnty. of Suffolk*, 685 F. App'x 69, 72 (2d Cir. 2017) (summary order) ("Where . . . the conduct of individual defendant officers does not violate the plaintiff's constitutional rights, the municipality is generally not liable for a policy or practice pursuant to which the conduct was performed."); *Fleming v. City of New York*, No. 18-CV-4866 (GBD/JW), 2023 WL 1861223, at *1 (S.D.N.Y. Feb. 9, 2023) (noting that, in some situations, a municipality

23

may be held liable under *Monell* even if a plaintiff is unable to establish liability against individual defendants).

However, it is "well-established that '*Monell* does not provide a separate cause of action . . . [rather,] it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.'" *Stemmons v. Glens Falls Hosp.*, No. 1:25-CV-0846 (GTS/ML), 2026 WL 1041873, at *6 (N.D.N.Y. Feb. 26, 2026), *report and recommendation adopted sub nom. Stemmons v. Glens Falls Hosp.*, No. 1:25-CV-0846 (GTS/ML), 2026 WL 858577 (N.D.N.Y. Mar. 30, 2026) (quoting *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006)).  "[A] *Monell* claim cannot succeed without an underlying [constitutional] violation." *Id*. (quoting *Mastromonaco v. City of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019) (summary order); *see also DeRaffele v. City of New Rochelle*, 15-CV-0282, 2017 WL 2560008, at *6 (S.D.N.Y. June 13, 2017) (citing *Segal*, 459 F.3d at 219) ("It is well-established that a *Monell* claim cannot lie in the absence of an underlying constitutional violation.").

### a. **Rensselaer County Board of Elections**

To the extent that plaintiff seeks to proceed against the Rensselaer County Board of Elections under *Monell*, the proper defendant is the municipality itself, Rensselaer County.  *See Batista*, 702 F.2d at 397 (citing *Monell*, 436 U.S. at 690-91).  However, even if plaintiff had properly named Rensselaer County and alleged that his constitutional rights were violated pursuant to an official Rensselaer County policy, a persistent and widespread custom or practice, failure to train or supervise, or because a policy-making official's deliberate conduct, any such claim against Rensselaer County still fail because

24

plaintiff's complaint has not established any underlying constitutional violation. *See Dougal*, 2023 WL 6430586, at \*10 (quoting *Dorsett-Felicelli, Inc.*, 371 F. Supp. 2d at 194);*see also Stemmons*, 2026 WL 1041873, at \*6 (quoting *Mastromonaco*, 779 F. App'x at 51); *Segal*, 459 F.3d at 219 ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct."); *Dotson v. City of Syracuse*, No. 5:18-CV-0750 (MAD/ATB), 2019 WL 2009076, at \*11 (N.D.N.Y. May 7, 2019) (citing *Matican v. City of New York*, 524 F.3d 151, 154 (2d Cir. 2008)) ("[C]ourts have found that a *Monell* claim is generally foreclosed when a plaintiff has suffered no constitutional violation at the hands of an individual defendant.").[15]

As written, plaintiff's complaint (1) improperly names an arm of the municipality rather than the municipality itself; (2) fails to allege any underlying constitutional violation; and (3), in turn, fails to allege any violation of his constitutional rights was due to an official Rensselaer County policy, persistent and widespread custom or practice, a failure to train or supervise, or because a policy-making official's deliberate conduct deprived him of constitutional rights.[16]  Therefore, it is recommended that to the extent plaintiff seeks to raise claims against the Rensselaer County Board of Elections, such claims be dismissed without prejudice and without opportunity to amend as against the Rensselaer County

---

[15] In addition, "[A] municipality may not be held liable under 1983 'solely because it employs a tortfeasor.'" *Mulqueen v. Herkimer Cnty. Child Protective Servs.*, No. 6:22-CV1-301 (TJM/ATB), 2023 WL 4931679, at \*6 (N.D.N.Y. Aug. 2, 2023), *report and recommendation adopted*, No. 6:22-CV-1301 (BKS/MJK), 2024 WL 756833 (N.D.N.Y. Feb. 23, 2024) (citing *Cowan v. City of Mt. Vernon*, 95 F. Supp. 3d 624, 636 (S.D.N.Y. 2015) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997)); *Dougal*, 2023 WL 6430586, at \*10 (quoting *Jeffes*, 208 F.3d at 56).

[16] Leave to amend his *Monell* claim is based on this Court granting leave to amend the underlying constitutional claims as against the individually-named defendants as identified *supra*.

25

Board of Elections, but with opportunity to amend as against Rensselaer County pursuant to *Monell*.

### b. Individual Defendants – Official Capacity

To the extent plaintiff seeks to name Sweeney, Nielson, Connelly, Schneider, and Jones in their official capacities, any such claim is duplicative of any claim he could set forth against the municipality. *See Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) ("A claim against a municipal officer in his official capacity is "in effect a claim against the governmental entity itself."); *Petruso v. Schlaefer*, 474 F. Supp. 2d 430, 441 (E.D.N.Y. 2007), *aff'd*, 312 F. App'x 397 (2d Cir. 2009) (summary order); *Alvarado v. Westchester Cnty.*, 22 F. Supp. 3d 208, 213-14 (S.D.N.Y. 2014).   Accordingly, the undersigned recommends that plaintiff's claims against Sweeney, Nielson, Connelly, Schneider, or Jones' in their official capacities for monetary damages be dismissed with prejudice and without opportunity to amend.

### 3. Fifteenth Amendment

Plaintiff argues that defendants' conduct violated his Fifteenth Amendment rights. *See* Dkt. No. 1 at 5, 11, 14; Dkt. No. 1-3 at 1.  The Fifteenth Amendment provides that "[t]he rights of citizens of the United States to vote shall not be denied or abridged by the United States or by any State on account of race, color, or previous condition of servitude." U.S. CONST. amend. XV.

The undersigned concludes that plaintiff's Fifteenth Amendment claim must fail because plaintiff's complaint fails to allege any facts demonstrating that any defendant denied or interfered with his right to vote.  *See generally* Dkt. No. 1; *see also* FED. R. CIV. P. 8(a)(2) (providing that a pleading which sets forth a claim for relief shall contain, among

26

other things, "a short and plain statement of the claim showing that the pleader is entitled to relief."). Rather, plaintiff's complaint only raises claims regarding filing documents with the Rensselaer County Board of Elections and his attempt to run for office on the Troy City Council. *See id*. Although plaintiff's complaint references the right to vote and alleges that defendants attempted to suppress both his right to vote and the larger electorate's right to vote, none of his allegations suggest a cause of action relating to the right to vote. *See id*. at 3, 5, 10-12, 16-17. Accordingly, the undersigned recommends that plaintiff's Fifteenth Amendment claims be dismissed with prejudice and without leave to amend.

4. **Section 2 of the Voting Rights Act of 1965**

Plaintiff also alleges that defendants' actions violated his rights under Section 2 of the Voting Rights Act of 1965. *See generally* Dkt. No. 1. Section 2 of the Voting Rights Act, as amended in 1982, states

(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgment of the right of any citizen of the United States to vote on account of race or color . . . as provided in subsection (b).

(b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: *Provided*, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

*Louisiana v. Callais*, 146 S. Ct. 1131, 1153 (2026) (quoting 52 U.S.C. § 10301).

27

Affording plaintiff due solicitude and reading his complaint liberally, the undersigned concludes that plaintiff fails to raise a claim under Section 2 of the Civil Rights Act of 1965 because, as with plaintiff's Fifteenth Amendment claim, Section 2 addresses an individual's right to vote and seeks to prevent discriminatory voting practices, generally. *See* 52 U.S.C. § 10301. Plaintiff's complaint fails to state any claims in this regard. *See generally* Dkt. No. 1; *see also* FED. R. CIV. P. 8(a)(2). Plaintiff's complaint only raises claims regarding his attempt to get on the Democratic Party primary ballot to run for office for the Troy City Council. *See id*. Plaintiff conflates his right to vote with his right to run for public office. Therefore, the undersigned recommends that plaintiff's claim pursuant to Section 2 of the Civil Rights Act of 1965 be dismissed with prejudice and without opportunity to amend.

## IV.  **Leave to Amend**

Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Romano v. Lisson*, 711 F. App'x 17, 19 (2d Cir. 2017) (summary order) (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quotation omitted)). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.'" *Edwards v. Penix*, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Here, the plaintiff's Fourteenth Amendment Due Process claim for monetary damages against Sweeney cannot be cured by amendment because New York State provides an adequate state remedy through an Article 78 proceeding. Likewise, the

28

defects in plaintiff's claims against: the individual defendants in their individual and official capacities for monetary damages and for declaratory and injunctive relief, all individual defendants alleging violations of his First, Fifth, Fifteenth Amendment rights, as well as pursuant to Section 2 of the Voting Rights Act of 1965, are substantive and cannot be cured by a better pleading. *See Edwards*, 388 F. Supp. 3d at 144-45 (quoting *Cuoco*, 222 F.3d at 112). It is recommended that these claims be dismissed with prejudice and without opportunity to amend. Similarly, the plaintiff's claims against the Rensselaer County Board of Elections for monetary damages and for declaratory and injunctive relief, are substantive and cannot be cured by a better pleading. However, the undersigned recommends dismissing this claim without prejudice and without opportunity to amend as against the Rensselaer County Board of Elections, but with opportunity to amend as against Rensselaer County pursuant to *Monell*. Conversely, plaintiff's Fourteenth Amendment Equal Protection claim against Sweeny and Neilson in their individual capacities for monetary damages and declaratory and injunctive relief relating to his Fourteenth Amendment Equal Protection claim can potentially be cured by a better pleading. It is recommended that plaintiff's Fourteenth Amendment Equal Protection claims be dismissed without prejudice and with opportunity to amend.

## IV. **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is

29

**RECOMMENDED**, that plaintiff's Fourteenth Amendment Due Process claim against Sweeney in her individual capacity for monetary damages (Dkt. No. 1) be **DISMISSED with prejudice and without opportunity to amend**; and it is further

**RECOMMENDED**, that plaintiff's Fourteenth Amendment Equal Protection claim against Sweeney and Nielson in their individual capacities (Dkt. No. 1) be **DISMISSED without prejudice and with opportunity to amend**, if possible, as set forth *supra*; and it is further

**RECOMMENDED**, that plaintiff's Fifth Amendment Due Process claim against all individual defendants (Dkt. No. 1) be **DISMISSED with prejudice and without opportunity to amend**, and it is further

**RECOMMENDED**, that plaintiff's Fourteenth Amendment Due Process, Fourteenth Amendment Equal Protection, and First Amendment claims against Connelly, Schneider, and Jones in their individual capacities (Dkt. No. 1) be **DISMISSED with prejudice and without opportunity to amend**; and it is further

**RECOMMENDED**, that plaintiff's First Amendment claims against Sweeney and Neilson in their individual capacities (Dkt. No. 1) be **DISMISSED with prejudice and without opportunity to amend**; and it is further

**RECCOMENDED**, that plaintiff's First and Fourteenth Amendment claims against Rensselaer County Board of Elections (Dkt. No. 1) be **DISMISSED without prejudice and *without* opportunity to amend as against the Rensselaer County Board of Elections, but *with* leave to amend as against Rensselaer County** pursuant to *Monell*; and it is further

**RECOMMENDED**, that all claims against the individual defendants in their official capacities (Dkt. No. 1) be **DISMISSED with prejudice and without opportunity to amend**, and it is further

**RECOMMENDED**, that plaintiff's Fifteenth Amendment and Section 2 of the Voting Rights Act of 1965 claims(Dkt. No. 1)  be **DISMISSED with prejudice and without opportunity to amend**; and it is further

**RECOMMENDED**, that, if the District Judge adopts this Report-Recommendation & Order, plaintiff be afforded thirty (30) days from the filing date of the Order adopting the Report-Recommendation & Order to file an amended complaint,[17] and if plaintiff does not timely files an amended complaint, the matter be closed and judgment entered dismissing the matter without prejudice, without need for further order of the Court; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.[18]

---

[17] If the District Judge permits plaintiff to file an amended complaint and plaintiff chooses to so file, any amended complaint must be complete pleading which will supersede and replace the original complaint in its entirety.   It may not incorporate by reference any portion of the original complaint. It may not reallege any claims that the District Judge dismisses with prejudice.

[18] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen-day (14) period, meaning that you have seventeen (17)

31

Dated: July 23, 2026
Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge

---

days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. *See* FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. *See id.* § 6(a)(1)(c).